**BRIAN J. FOLEY, Attorney at Law**
BY:     **BRIAN J. FOLEY, ESQ.** (PA ID No. 68806)
6701 Germantown Avenue, Suite 200
Philadelphia, PA  19119
(267) 930-4425 v
(267) 930-4427 f
Brian@BrianJFoleyLaw.com

*Attorney for Plaintiff*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| **KEVIN LEWIS** | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO.  23-cv-1634 |
| v. | : | |
| | : | |
| **OVERBROOK SCHOOL FOR THE BLIND** | : | |
| | : | |
| **&** | : | |
| | : | |
| **CAROL HAVENS-DOBBS** | : | |
| | : | |
| Defendants | : | |

---

### VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff Kevin Lewis, by and through his attorney, as and for this Verified Complaint against Defendant, Overbrook School for the Blind, and Carol Havens-Dobbs, states as follows:

## PRELIMINARY STATEMENT

1.      Defendant, Overbrook School for the Blind ("OSB"), summarily fired six employees and moved Plaintiff, Kevin Lewis, to the night shift after illegally denying their requests for religious exemptions to OSB's Covid-19 vaccination requirement. OSB acknowledged that Plaintiff's (and other employees who requested accommodation) religious beliefs were sincerely held but denied his requests based on OSB's claim that vaccination was necessary to protect OSB's staff and students, which OSB knew was false based on statements by, *inter alia*, the CDC and FDA that the vaccines failed to prevent or reduce transmission. And, a few weeks after firing the six workers and moving Mr. Lewis to the night shift, OSB experienced a Covid-19 outbreak among its "fully vaccinated" workforce -- and went remote.

2.      OSB exploited the pandemic to discriminate against employees based on, religion and race and disability and genetic information. Five of these six employees OSB fired are Black, as is Plaintiff Lewis. OSB moved Mr. Lewis to the night shift, as retaliation for his request for accommodation for his religious views and also for his previous protected activity related to a pending lawsuit.  As described below, OSB subsequently engaged in additional retaliation against him as well as for his filing a workers compensation claim. Mr. Lewis seeks justice for OSB's and Carol Havens-Dobbs' illegal conduct against him.

## PARTIES

3.      Plaintiff **Kevin Lewis** is an adult Black male resident of New Jersey and is

currently and at all relevant times was employed by Overbrook School for the Blind as a security guard and training officer. Plaintiff's verification of this Complaint is attached as Exhibit A.

4.        Defendant, **Overbrook School for the Blind** ("OSB"), is a private school for the blind at 6333 Malvern Avenue, Philadelphia, Pennsylvania.  It is a nonprofit organization exempt from income tax. OSB has more than 220 employees.

5.        There are two schools for the blind in Pennsylvania, OSB and Western Pennsylvania School for Blind Children (WPSBC). Unlike OSB, WPSBC did not impose a vaccine mandate on its employees.

6.        At all relevant times, Defendant OSB acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of their job duties.

7.        Defendant (PHRA Respondent), **Carol Havens-Dobbs,** was at all relevant times HR Director at OSB and had the power, *inter alia,* to direct, promote, reassign, and fire employees including Plaintiff.

## JURISDICTION

8.        This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 as it involves federal questions pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), the Genetic

Nondiscrimination Act, 42 U.S.C. § 2000ff-1(a) ("GINA"); and the Age Discrimination in

Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").  This Court has supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 over Plaintiff's various state law claims for discrimination and

retaliation based on race, religion, sex, age, and disability, and violation of public policy for

retaliation against him for, *inter alia*, for availing himself of benefits to which he had a right

under Pennsylvania's workers compensation protection.

## VENUE

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) on two independent

bases: Defendant OSB is in this judicial district; and the acts and omissions that gave rise to all

of Plaintiff's claims occurred in this judicial district.

## FACTS

### Background: FDA, CNN, New York Times: The Covid-19 Vaccines Don't Prevent Transmission

10.     On December 11, 2020, the FDA granted Emergency Use Authorization ("EUA")

for the Pfizer-Bio-N-Tech COVID-19 vaccine. The FDA stated prominently, including in

reader-friendly FAQs on its website, that there was no evidence that this vaccine prevented

transmission of the SARS-CoV-2 virus from individuals infected despite vaccination. This

statement remains unchanged on the FDA website: https://www.fda.gov/news-events/press-

announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-

authorization-first-covid-19 (last accessed April 25, 2023). The FDA likewise included this same language regarding its December 18, 2020 EUA for Moderna's vaccine and its February 27, 2021 EUA for Johnson & Johnson's Janssen ("J&J") vaccine.

11.     In Summer 2021, US officials and media including *The New York Times*, CNN, *The Philadelphia Inquirer*, PBS, and NPR all reported that the Covid-19 shots did not prevent transmission of the virus that causes Covid-19 from individuals who, despite being "fully vaccinated," had become infected with the virus.

12.     For example, in June 2021, the *New York Times* reported that such infections had been occurring before April 30, 2021, and that the CDC had stopped recording such infections if there were no severe symptoms. *See* Johnny Diaz, *You're Vaccinated for Covid-19, and You Just Tested Positive. Now What?* NY Times, June 23, 2021, UPDATED July 19, 2021,

https://www.nytimes.com/2021/06/23/us/can-i-get-covid-after-the-vaccine.html (last accessed April 25, 2023)

13.     For example, on August 6, 2021, CNN announced that the head of the CDC, Rochelle Walensky, MD, admitted that these vaccines did not prevent transmission.  *See* Madeline Holcombe, et al., *Fully vaccinated people who get a Covid-19 breakthrough infection can transmit the virus, CDC chief says,* CNN.COM, August 6, 2021

https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html (emphasis added) (last accessed April 25, 2023).

14.     For example, on August 21, 2021, the FDA announced that it had granted full

approval to Pfizer's vaccine, which had been known as the Pfizer-BioNTech vaccine, which was now called Comirnaty.  The FDA stated prominently, including in reader-friendly FAQs on its website, that "the scientific community does **not** yet know if Comirnaty will reduce such transmission" of the SARS-CoV-2 virus from individuals infected despite vaccination. This statement remains unchanged on the FDA website: https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna (last accessed April 25, 2023) (emphasis added).[1]

*Background: Everybody Knew: Black People Are the Most "Vaccine Hesitant" Americans*

15.    It was widely reported in U.S. media that vaccine mandates have a disproportionate impact based on race, and that Black people were the most "vaccine hesitant" Americans. *See, e.g., 'You Can't Treat If You Can't Empathize': Black Doctors Tackle Vaccine Hesitancy*, NPR.ORG, January 19, 2021 https://www.npr.org/sections/health-shots/2021/01/19/956015308/you-cant-treat-if-you-cant-empathize-black-doctors-tackle-vaccine-hesitancy (last accessed April 25, 2023). *See also Progressive Hypocrisy, White Supremacy: How the Pandemic Revealed Progressive Pharisaism*, MODERN HERETIC, August 13, 2021 https://modernheretic.com/progressive-hypocrisy-white-supremacy-how-the-pandemic-revealed-progressive (last accessed April 25, 2023).

---

[1] The FDA subsequently used the same language regarding the January 31, 2022 approval for Moderna's Covid-19 vaccine, SpikeVax: https://www.fda.gov/vaccines-blood-biologics/qa-spikevax-covid-19-vaccine-mrna (last accessed April 25, 2023).

*After the First Few Months of the Covid-19 Pandemic and Before Covid-19 Vaccines Were Available, OSB Operated In-Person*

16.     Like many institutions in Spring 2020, OSB operated remotely in response to the Covid-19 pandemic.

17.     For most of the subsequent school year, 2020-2021, and into Fall 2021, OSB was open for in-person teaching and learning.

18.     During the 2020-2021 school year, before and after the Covid-19 vaccines were widely available, OSB operated without requiring any worker, including Plaintiff, to be injected with any of these drugs. OSB did not require any employees to be injected with a flu vaccine or any other vaccinations.

19.     In the months following these EUAs, OSB did not require any of its employees to get injected with any these Covid-19 drugs, or any other vaccines.

20.     During these time periods, Plaintiff worked as a security guard and training officer.  At all relevant times, Mr. Lewis had a pending federal lawsuit against OSB and supervisor Patricia Gooding for hostile work environment and retaliation based on race, sex, and age (*Lewis v. Overbrook School for the Blind, et al.*, E.D. Pa No: 2:21-cv-03019-ER).

*OSB Enacts Its Illogical, Anti-Science, Racist Vaccine Policy*

21.     Despite OSB's knowledge that the vaccines did not prevent transmission of the

virus that causes Covid-19, and despite OSB's knowledge that African Americans were the most "vaccine hesitant" Americans, and despite that OSB and numerous other institutions, including Congress and almost all federal courts, had been operating in-person without any vaccine mandate, OSB announced, in September, 2021, its new policy that all OSB employees were required to be injected with a Covid-19 "vaccine."

22.    OSB's new policy denied employees the option of continuing to work at OSB without being injected.  That is, OSB provided no testing option for its employees who may have been "vaccine hesitant." The *only* way for an employee to continue working at OSB without being injected, according to the policy, was if the worker applied for, and OBS granted, a medical or religious accommodation.

23.    OSB's vaccine policy explicitly admitted that OSB "cannot eliminate the risk of transmission on our campus, but it is taking steps to mitigate the risk," and erroneously stated, "Vaccination is the key prevention strategy to end the pandemic and return to normal and diminish the threat to vulnerable individuals."

24.    OSB knew that the vaccines did not prevent or reduce transmission.

25.    OSB announced that if employees did not provide proof of vaccination by November 29, 2021 or had not received an exemption, the worker would "be considered as having resigned from their employment."

26.    The use of "resigned" was intended by OSB to intimidate and coerce its "vaccine hesitant" employees, by making them aware that if they chose to avoid injection with these

novel drugs, they most likely would be denied Pennsylvania unemployment compensation and would risk spiraling into poverty. This use of "resigned" was also intended as a way of thwarting any employees whom OSB fired for not being vaccinated from being able to sue OSB for any claims based on termination.

27.     OSB stated that any employee who received an exemption "must both comply with OSB's general masking mandate and provide the results of a weekly negative PCR test for COVID-19 from an approved testing site."

28.     Despite that it was widely known, including by OSB, that the vaccines did not prevent or indeed even reduce transmission and that vaccinated people were spreading Covid-19, OSB's policy did not require "vaccinated" employees to be tested for Covid-19. *Only unvaccinated employees* would be required to submit themselves to testing.

29.     That same month, on September 9, President Biden announced his sweeping OSHA mandate for employees of all U.S. businesses with more than 100 employees. But President Biden's policy allowed for a testing option: employees who did not want to be injected with the novel Covid-19 vaccines could test weekly instead.

30.     OSB's policy, however, did not provide any testing option for employees who did not want to be injected with the novel Covid-19 vaccines.  OSB never modified its policy to include such an option, as President Biden's policy did.

31.     Nor did OSB's policy account for the fact that many if not most people, including Plaintiff, likely already had acquired immunity from Covid-19 from previous infection by this

highly contagious and widespread virus. OSB's policy wholly ignored "natural immunity."

32.      The goal of OSB's policy was obviously not to prevent or reduce the spread of Covid-19. It was to identify and discriminate against employees based on, *inter alia*, their religion, race, and disability.

***Plaintiff Requests Accommodation of his Sincerely Held Religious Beliefs -- and Ask to Test Instead of Being Required to Vaccinate***

33.      Plaintiff timely requested accommodations based on his sincerely held religious beliefs and expressed those beliefs to OSB.

34.      OSB, through its then-HR Director, Carol Havens-Dobbs, responded by asking Plaintiff some questions but eventually informed him that OSB **did not question the sincerity of his religious beliefs**.[2]

35.      In informing HR Director Havens-Dobbs that no vaccination and no accommodation should be required, Plaintiff, along with some of the workers OSB eventually fired, through his counsel, explained:

- The premise of the "vaccine" requirement was baseless, as these novel drugs did not prevent or meaningfully reduce transmission of the virus that causes Covid-19. Plaintiff illustrated this commonsense point with information from the FDA as well as to other

---

[2] Because OSB acknowledged the sincerity of Plaintiff's religious beliefs, a recitation of these beliefs is not included in this Complaint. OSB's requiring Plaintiff to explain his religious beliefs was highly intrusive, and Plaintiff never should have been forced to divulge his personal beliefs to OSB given that the policy for which Plaintiff sought accommodation was nonsensical *ab initio*. Including Plaintiff's personal religious beliefs in this public Complaint would further invade Plaintiff's privacy and might subject Plaintiff to further abuse and further discrimination motivated by widespread anti-religious animus.

sources, including an opinion from the United States Court of Appeals for the Fifth Circuit that stated bluntly that vaccinating employees against Covid-19 "cannot prevent vaccinated employees from spreading the virus in the workplace." *See BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604, 616, n. 19 (5th Cir. 2021)

- The "unvaccinated" and the "vaccinated" were similarly spreading Covid-19, according to news articles and studies from established sources including THE NEW ENGLAND JOURNAL OF MEDICINE and THE LANCET.

- The only other school for the blind in Pennsylvania, Western Pennsylvania School for Blind Children, in Pittsburgh, did not require any its employees to be injected with any of these novel Covid-19 drugs.

- Numerous other schools for the blind in the United States did not require any of their employees to be injected with any of these novel Covid-19 drugs.

- Numerous employers, including the White House, Congress, most federal and state courts, the FDA, the CDC, and several large corporations, did not require their employees to be injected with these novel Covid-19 drugs.

- The OSB workers including Plaintiff were all willing to continue using the protective measures OSB required them to use for more than a year while working fulltime at OSB and working closely with students.

- OSB should "continue the legally required interactive process with" these workers, who

were willing to work with OSB to achieve reasonable accommodation.

- Some of the workers including Mr. Lewis had or likely already had acquired immunity to Covid-19 via previous infection, and numerous, studies showed that such naturally-acquired immunity is superior to and more durable than any immunity gained from the Covid-19 vaccines, such that "Firing employees who have natural immunity because they will not get vaccinated would be nonsensical and illegal."

- Firing these workers would gratuitously harm OSB's students: "Many OSB students have likely grown attached to these caring dedicated workers, which is a tribute to OSB."

36.     Rather than engage meaningfully with these points, OSB, through HR Director Havens-Dobbs, told these workers and Plaintiff that they must provide proof that they have been injected with these novel biotech drugs -- or they would be deemed to have voluntarily resigned.

37.     OSB refused to consider the information Plaintiff and his colleagues provided because OSB's real reason for firing these workers and moving Mr. Lewis to the night shift was not, and logically could not have been, to protect anybody. Rather, OSB's real reasons were: animus against all these workers based on religion, race, and disability -- OSB perceived them as infected and contagious--; and genetics, *i.e.,* Plaintiff and these colleagues were not among the people injected with the Covid-19 novel gene therapy drugs that were designed to instruct their DNA to *create* the noxious "spike protein" from the SARS-CoV-2 virus for an indefinite

and unknown period of time. Plaintiff and these colleagues were different, *genetically*, from OSB staff who had been injected – and OSB intentionally discriminated against them on that basis.

### OSB Fires Righteous, Lee, Jones, Holland, Dunson, and Yazujian – and Moves Mr. Lewis to the Night Shift and Saturdays an Sundays

38.     On or about November 29 and 30, 2021, employees Righteous, Lee, Jones, Holland, Dunson, and Yazujian reported to work at OSB and showed they were ready, willing, and able to keep working for OSB -- as they had done throughout much of the pandemic without ever being injected with novel biotech Covid-19 vaccines that did not prevent or reduce transmission.

39.     Now, however, OSB barred them from coming onto OSB grounds.

40.     OSB treated these workers as if they were, without the vaccine, permanently sick and contagious, despite that OSB was aware its "vaccinated" employees were likely to spread Covid-19.

41.     Nevertheless, that same day and for all relevant times thereafter, OSB has let "vaccinated" employees come onto OSB grounds and enter OSB buildings to interact with other employees and students, despite that OSB knew that vaccinated people were as likely to contract and spread COVID as unvaccinated people. OSB did not require any vaccinated employees, whom OSB knew could spread Covid-19, to test regularly for Covid-19.

42.     OSB told the fired workers they could return to work at OSB only if they provided proof of vaccination. OSB's offer was an empty gesture, because OSB was

conditioning any reinstatement on the presumptuous and discriminatory and humiliating requirement for these workers to act *contrary to what OSB knew were their sincerely held religious beliefs*.

43.    OSB did not fire Mr. Lewis but moved him to the night shift and also required him to work Saturdays and Sundays, which was intended to and did interfere with his ability to go to church services. This move was in fact a retaliation against him for exercising his rights to accommodation of his religious beliefs as well as for his prior protected activity of filing a lawsuit against OSB in July, 2021 for discrimination based on race, sex, and age. Mr. Lewis asked HR Director Havens-Dobbs for a schedule change so that he could go to church, which she did not accommodate. Upon information and belief, OSB did not fire Mr. Lewis because it feared doing so would be regarded as retaliation for his pending federal lawsuit against OSB; nevertheless, moving Mr. Lewis to the night shift constituted, retaliation for, *inter alia,* that protected conduct and was an effort to cause him to quit working for OSB.

44.    It would have been no burden to OSB to let its employees continue working for OSB without being vaccinated, and to let Mr. Lewis remain on the day shift.

45.    OSB was aware that its vaccine policy was racist. Although Black people made up just 36% of the OSB workforce (90 out of 250) at that time, *the five Black Plaintiffs OSB fired constituted 83% of all the workers OSB fired for declining to be injected.* That is, OSB fired six workers, and all but one of them was Black.

46.    Despite this glaring disparity, OBS did not reverse its decision to fire the

employees it fired or move Mr. Lewis back to the day shift and did not revise its racist policy.

### *After OSB Moves Mr. Lewis to the Night Shift, and He Injures His Back*

47.     Shortly after OSB moved Plaintiff Lewis to the night shift, he injured his back on the job on or about November 29, 2021. It was his first-ever work injury.

48.     OSB tried to prevent Officer Lewis from receiving any disability payments. On or about January 6, 2022, Plaintiff Lewis had a phone call with H.R. Director Havens and asked her about short-and long-term disability. Havens said he could not get that.

49.     Plaintiff Lewis was forced to retain counsel from Pond Lehocky Giordano LLP and again requested to be able to apply for disability payments. After a significant delay, Havens provided the application paperwork, and, contrary to what she had told him to try to dissuade him from ever applying, Officer Lewis's application was approved.  By these actions, Havens and OSB engaged in discrimination and retaliation against Officer Lewis.

### *After the "Unvaccinated" Workers Were Gone, OSB Had to Return to Operating Remotely – Because Its "Vaccinated" Workers Were Spreading COVID-19*

50.     Just weeks after OSB fired workers, and moved Mr. Lewis to the night shift, for being "unvaccinated," and after "unvaccinated" Plaintiff Lewis went out on disability leave for his workplace injury, OSB's "vaccinated" employees and students experienced numerous Covid-19 infections. As a result, OSB closed down its in-person operations and returned to "remote" operations.

51.     Despite that OSB could have recalled the six workers it fired to work at their former jobs "remotely," where they would pose none of the purported danger to others that OSB had, falsely, claimed they posed, OSB did not offer to rehire any of them, even temporarily. Such temporary work, especially during the holiday season, and especially after being denied unemployment benefits, would have helped the six fired workers recover financially after being fired by OSB.

52.     Despite that it was beyond obvious to OSB that the "vaccines" did not prevent or reduce transmission, and that vaccinated people, including OSB employees, were spreading COVID-19, OSB continued to refuse to offer to reinstate any of the six fired workers without requiring them first to violate their sincerely held religious beliefs by getting "vaccinated."

53.     Despite that anyone with an elementary understanding of virology and vaccination knew that infection with Covid-19 would provide some immunity against future infection, and that Plaintiff and the six workers OSB fired had provided OSB with links to studies supporting this point, OSB never asked any of the workers or Mr. Lewis if they had acquired such immunity.

54.     Despite the outbreaks that forced OSB to go remote, and despite that OSB knew its "vaccinated" workers and students were becoming infected with Covid-19 and transmitting it to others, OSB did not update its policy to require that "vaccinated" workers and students be tested for Covid-19. This makes clear that the motivation for OSB's pandemic policy was not to help mitigate the effects on the pandemic on its students and staff but simply to provide OSB

with a handy excuse to summarily fire employees based on discriminatory motives.

55.    Nor, despite the impossible-to-ignore real-world inconvenient evidence of vaccine failure, did OSB update its policy to require "boosters," which Pfizer and Moderna claimed would improve the weakened-over-time purported protection they had claimed their vaccines provided against serious illness (not transmission). OSB had no need to require boosters, as it had already achieved its goal to fire employees based on discriminatory motives.

***The Fired Workers Try to Convince OSB to Rehire Them Given OSB Could Not Reasonably Claim the Vaccines Prevented or Reduced Transmission***

56.    After firing the six workers, and after moving Plaintiff Lewis to the night shift, OSB retained outside corporate employment defense counsel, Jeffrey Pasek, Esquire, from the large, well-known, corporate law firm Cozen & O'Connor in Philadelphia.

57.    Righteous, Lee, Jones, Holland, and Dunson, through their counsel, attempted to engage Mr. Pasek in a belated interactive process to try to stanch the damage and suffering OSB had inflicted on them and was continuing to inflict on them.  OSB had told the six workers it fired that they could return to their jobs if they "got vaccinated."

58.    Righteous, Lee, Jones, Holland, Dunson, through their counsel, presented Mr. Pasek with additional studies and news stories regarding the obvious and incontrovertible evidence that the vaccines did not prevent or reduce transmission and explained that the workers OSB had fired (and Mr. Lewis) thus posed no more of a threat of transmitting Covid-19 than any of OSB's "fully vaccinated" employees.

59.     Mr. Pasek responded by doubling down on OSB's debunked claim that the vaccines prevented and/or reduced transmission.

60.     On or about February 9, 2022, Mr. Pasek suggested that counsel for Righteous, Lee, Jones, Holland, Dunson gather materials to submit to try to convince an "expert," *hired by OSB and paid by OSB,* that the vaccines did not prevent or even reduce transmission.

61.     OSB's offer was an empty gesture, a bullying tactic by a powerful entity. Any expert *hired by and paid by OSB* would, of course, repeat what the expert knew OSB wanted the expert to say. Moreover, there would be no reason for anybody to credit the observations of an "expert" hired and paid by OSB, when everyone knew the FDA, the CDC, and mainstream media had admitted what anybody could see with their own eyes:  the Covid-19 vaccines did not prevent or reduce transmission.

***Mr. Lewis's Doctor Clears Him to Return to Work – But OSB Refuses to Let Him Return***

62.     After grueling and dedicated efforts to rehabilitate from this injury, and after keeping OSB up-to-date on his progress toward recovery and return to work, Mr. Lewis emailed his supervisor Angie Williams and HR Director Havens that he could return to work effective July 5, 2022, and requested any necessary paperwork so that he could return. No one from OSB responded.

63.     On or about June 30, 2022, Mr. Lewis formally requested a reasonable accommodation for his back injury in writing to Williams and Havens and included documentation from his physicians.  His physicians said that he should not be placed on the

night shift, as his back pain likely would increase during those hours, and that he should not

lift over 50 lbs., and that he would need frequent breaks.  The physicians indicated that Mr.

Lewis could perform the essential functions of the job with these reasonable accommodations

as of July 5, 2022.

64.     On or about July 1, 2022, HR Director Havens ordered Mr. Lewis to not return to

work until she contacted him further. *She never did.* No one from OSB ever contacted Officer

Lewis to let him know he could return. No one from OSB ever engage in the required

interactive process.  Plaintiff Lewis's attorney had to reach out to OSB's hired, outside,

corporate attorney, Susan Guerette, Esquire, of the large law firm Fisher Phillips, which

represents OSB in Plaintiff Lewis's pending case against OSB, in mid-August 2022, to inquire

into the delay.

65.     The hired outside corporate attorney responded to undersigned counsel on

August 25, 2022 (almost a week after the requested response date) by claiming, falsely, that

Officer Lewis should have returned to work on July 5 but had "failed" to do so.  It was obvious

that OSB was trying to fire Plaintiff Lewis, based on the discriminatory and retaliatory animus

concerning his pending federal lawsuit, his exercise of his rights to request accommodation for

his religious views and disability and his use of workers compensation, and for his perceived

disability of being likely to spread Covid-19 and for his disabling back injury.  On or about this

time, OSB's CEO and Executive Director Todd Reeves sent Mr. Lewis a certified letter telling

Mr. Lewis that the reason he was not returned to work on July 5 was because Mr. Lewis had

refused to return.

66.     Mr. Lewis had to apply for unemployment compensation.

67.     Mr. Lewis exercised his federal and Pennsylvania rights to dual-file charges with

the Equal Employment Opportunity Commission (EEOC) and Pennsylvania Human Relations

Commission (PHRC) on or about August 26, 2022. (Plaintiff received a Notice of Right to Sue

dated January 30, 2023. All conditions precedent to this lawsuit have been met.)

68.     Subsequently, Mr. Lewis cleared this up with the help of his attorney and

returned to work on or about October 3, 2022 and was returned to paid status.  OSB, however,

refused to return him to the day shift and Saturdays and Sundays, despite his repeated

requests and a written request to his supervisor Angie Williams on December 2, 2022, and

another written request to Ms. Havens-Dobbs' successor, Shannon Brown, on January 16, 2023,

"in order to celebrate, worship, recognize, and attend services, in accordance with my religion

and religious beliefs." However, Mr. Lewis was forced to continue working on the night shift

and on Saturdays and Sundays. There was no reason for OSB's refusal, as by now it was long

after it had become widely known that the Covid-19 vaccines did not prevent infection or

transmission. The refusal was retaliatory.

69.     Prior to Mr. Lewis' return, Patricia Gooding, a PHRA respondent in Mr. Lewis's

pending federal lawsuit, began calling various security officers on various shifts, including at

least one officer who did not like Mr. Lewis, to inform them that Mr. Lewis was returning to

work. This action by Gooding was part of intentional efforts to re-energize the HWE and retaliation against Mr. Lewis.

70.     In addition, on or about October 3, 2022, and several nights after, Mr. Lewis was posted to a shed without adequate heat for the entire night shift, which exacerbated his back injury. He brought this to the attention of his immediate supervisor, who provided a plug-in heater, which was inadequate, especially during cold nights. Upon information and belief, this also was part of the HWE and retaliation against Mr. Lewis for his documented protected activity.

71.     The long period of no-pay from OSB caused Mr. Lewis financial harm, such as difficulty meeting his mortgage obligations.

*"Following the Science" (Finally), OSB Rescinds Its Ineffectual Vaccine Mandate*

72.     On or about December 20, 2022, OSB rescinded its vaccine mandate. It told the workers it fired that they could apply again for their jobs. There was no offer of the lost pay – more than a year for the six workers OSB fired, or compensation for any other losses.

73.     OSB finally returned Mr. Lewis to the day shift, with Saturdays and Sundays off, on or about February 2023.

## COUNT I

### *Title VII Religious Discrimination, HWE, and Retaliation*

### *Lewis v. OSB*

74.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

75.     Plaintiff is protected under Title VII from discrimination in the workplace and a hostile work environment (HWE) based on his religious beliefs and from retaliation for engaging in protected activity regarding discrimination for religious beliefs.

76.     OSB is an "employer" under Title VII and falls within jurisdiction of the statute.

77.     OSB inter alia moved Mr. Lewis to the night shift and Saturdays and Sundays and subsequently refused to let him return to work (and, subsequently, to the day shift with Saturdays and Sundays off), because of his religion and because of his protected activity of requesting accommodation and his claims including in his EEOC/PHRA charge that the mistreatment of him was based on religion

78.     Based on the foregoing, OSB subjected Plaintiff to discrimination and HWE based on his religious beliefs and retaliated against him for engaging in protected activity regarding those beliefs.

79.     These violations were intentional and willful and malicious and warrant imposing punitive damages.

80.     As the direct and proximate result of OSB's violating Title VII's rules against religious discrimination, HWE, and retaliation, Plaintiff have sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

81.     Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of OSB's illegal conduct unless and until this Court grants the relief requested herein.

**COUNT II**

***PHRA – Religious Discrimination, HWE, and Retaliation***

***Lewis v. OSB and Havens-Dobbs***

82.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

83.     Plaintiff is protected under the Pennsylvania Human Rights Act (PHRA) (42 U.S.C. § 2000e- 2 et seq.) from discrimination in the workplace and HWE based on his religious beliefs and from retaliation for engaging in protected activity regarding those beliefs.

84.     OSB is an "employer" under the PHRA and falls within jurisdiction of the statute. Carol Havens-Dobbs was a supervisor under the PHRA and falls within jurisdiction of that statute.

85.     OSB inter alia moved Mr. Lewis to the night shift and Saturdays and Sundays and subsequently refused to let him return to work (and, subsequently, to the day shift with Saturdays and Sundays off), because of his religion and because of his protected activity of requesting accommodation and his claims including in his EEOC/PHRA charge that the mistreatment of him was based on religion. Ms. Havens-Dobbs was involved in all of the decision-making regarding these actions.

86.     Based on the foregoing, OSB subjected Plaintiff to discrimination and HWE based on his religious beliefs and retaliated against him for engaging in protected activity regarding those beliefs, in violation of the PHRA, and Havens-Dobbs aided and abetted this discriminatory and retaliatory conduct.

87.     These violations were intentional and willful and malicious and warrant imposing liquidated damages.

88.     As the direct and proximate result of OSB's and Havens-Dobbs' breaking PHRA's rules against religious discrimination, HWE, and retaliation, Plaintiff has sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

89.     Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' illegal conduct unless and until this Court grants the relief requested herein.

## COUNT III

### *Title VII – Race Discrimination, HWE, and Retaliation*

### *Lewis v. OSB*

90.     Plaintiff is protected under Title VII from discrimination in the workplace and HWE based on his race and from retaliation for engaging in protected activity regarding his race.

91.     OSB is an "employer" under Title VII and falls within jurisdiction of the statute.

92.     OSB inter alia moved Mr. Lewis to the night shift and Saturdays and Sundays, and, after he was injured and recovered, refused to let him return to work, and subsequently, after he recovered, to the day shift, because he is Black, and as retaliation for his protected activity regarding race discrimination, including his protected activity regarding this mistreatment and his pending federal lawsuit and his subsequent EEOC/PHRA charge, which include claims of race discrimination.

93.     Based on the foregoing, OSB subjected Plaintiff to discrimination and HWE based on his race and retaliation for engaging in protected activity regarding his race in violation of Title VII.

94.     These violations were intentional and willful and malicious and warrant imposing punitive damages.

95.     As the direct and proximate result of Defendant OSB's breaking Title VII's rules against race discrimination, HWE, and retaliation, Plaintiff has sustained loss of pay and

related financial harm, emotional and psychological distress, loss of self-esteem, harm to his

reputations, and loss of future earning power along with and/or in addition to the damages

and losses set forth herein.

96.     Plaintiff is suffering and will continue to suffer irreparable harm and monetary

damages as a result of OSB's illegal conduct unless and until this Court grants the relief

requested herein.

<u>**COUNT IV**</u>

*PHRA – Race Discrimination, HWE, and Retaliation*

*Lewis v. OSB and Havens-Dobbs*

97.     The allegations contained in the preceding paragraphs are hereby realleged and

incorporated by reference herein.

98.     Plaintiff is protected under the Pennsylvania Human Rights Act (PHRA) (42

U.S.C. § 2000e- 2 et seq.) from discrimination in the workplace and HWE based on his race and

from retaliation for engaging in protected activity regarding race.

99.     OSB inter alia moved Mr. Lewis to the night shift and Saturdays and Sundays,

and, after he was injured and recovered, refused to let him return to work, and subsequently,

after he recovered, to the day shift with Saturdays and Sundays of, because he is Black, and as

retaliation for his protected activity regarding race discrimination, including his protected

activity regarding this treatment and his pending federal lawsuit and subsequent

EEOC/PHRA charge, which include claims of race discrimination. Ms. Havens-Dobbs was involved in all of the decision-making regarding these actions.

100.    Based on the foregoing, OSB subjected Plaintiff to discrimination and HWE based on his race and retaliation for engaging in protected activity regarding his race in violation of the PHRA, and Havens-Dobbs aided and abetted this discriminatory and retaliatory conduct.

101.    These violations were intentional and willful and malicious and warrant imposing liquidated damages.

102.    As the direct and proximate result of OSB's and Havens-Dobbs' breaking the PHRA's rules against race discrimination, HWE, and retaliation, Plaintiff has sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

103.    Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' illegal conduct unless and until this Court grants the relief requested herein.

## COUNT V

*Section 1981 – Race Discrimination, HWE, and Retaliation*

*Lewis v. OSB and Havens-Dobbs*

104.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

105.    Plaintiff is protected under Section 1981 from discrimination in the workplace and HWE based on is race and from retaliation for engaging in protected activity regarding his race.

106.    OSB and Havens-Dobbs fall within jurisdiction of Section 1981.

107.    Based on the foregoing, OSB and Havens-Dobbs engaged in unlawful employment practices in violation of Section 1981.

108.    OSB and Havens-Dobbs inter alia moved Mr. Lewis to the night shift and Saturdays and Sundays, and, after he was injured and recovered, refused to let him return to work, and subsequently, after he recovered, to the day shift with Saturdays and Sundays off, because he is Black, and as retaliation for his protected activity regarding race discrimination, including his protected activity regarding this treatment and his pending federal lawsuit and subsequent EEOC/PHRA charge, which include claims of race discrimination. Havens-Dobbs was involved in all of the decision making regarding all actions.

109.    Based on the foregoing, OSB and Havens-Dobbs subjected Plaintiff to discrimination and HWE based on his race and retaliation for engaging in protected activity regarding his race in violation of Section 1981.

110.    These violations were intentional and willful and malicious and warrant imposing punitive damages.

111.    As the direct and proximate result of Defendants' breaking Section 1981's rules against race discrimination, HWE, and retaliation, Plaintiff has sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, harm to their reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

112.    Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's illegal conduct unless and until this Court grants the relief requested herein.

## COUNT VI

*Disability Discrimination, HWE, and Retaliation Under the Americans with Disabilities Act (ADA)*

*Lewis v. OSB*

113.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

114.    Plaintiff is protected under the ADA from discrimination in the workplace and HWE based on disability, including perceived disability, and from retaliation for engaging in protected activity regarding disability discrimination.

115.    OSB is an "employer" under the ADA and falls within jurisdiction of the statute.

116.    Defendant OSB's inter alia moving Plaintiff Lewis to the night shift and Saturdays and Sundays was deliberate and willful and intended to harm Plaintiff based on

OSB's perception that he was disabled with Covid-19 and permanently imminently likely to infect coworkers and students because they were "unvaccinated."

117.     In addition, OSB's inter alia refusal to let Mr. Lewis return to work, and OSB's subsequent refusal to return Mr. Lewis to the day shift with Saturdays and Sundays off, were further discrimination against him based on disability, HWE, and retaliation against him for his protected activity including his claim that OSB's moving him to the night shift and Saturdays and Sundays was disability discrimination; and his request for accommodation for his back injury, which, *inter alia,* limited the amount of weight he could lift.

118.     OSB has acted in the absence of good faith and reasonable grounds. Its actions were outrageous, egregious, malicious, intentional, willful, wanton, and in reckless disregard of the rights of Plaintiff and warrant the imposition of all available damages including punitive damages.

119.     As the direct and proximate result of OSB's violations of the ADA's protection against disability discrimination, HWE, and retaliation, Plaintiff has sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

120.     Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's illegal conduct unless and until this Court grants the relief requested herein.

## COUNT VII

### PHRA – Disability Discrimination, HWE, and Retaliation

### Lewis v. OSB and Havens-Dobbs

121.    The allegations contained in the preceding paragraphs are hereby realleged and

incorporated by reference herein.

122.    Plaintiff is protected under the Pennsylvania Human Rights Act (PHRA) (42

U.S.C. § 2000e- 2 et seq.) from discrimination in the workplace based on his disability and

perceived disability and from retaliation for engaging in protected activity regarding disability

discrimination.

123.    Defendant OSB's inter alia moving Plaintiff Lewis to the night shift and

Saturdays and Sundays was deliberate and willful and intended to harm Plaintiff based on

OSB's perception that he was disabled with Covid-19 and permanently imminently likely to

infect coworkers and students because they were "unvaccinated." Ms. Havens-Dobbs was

involved in all of the decision-making regarding these actions.

124.    In addition, OSB's inter alia refusal to let Mr. Lewis return to work, and OSB's

subsequent refusal to return Mr. Lewis to the day shift with Saturdays and Sundays off, were

further discrimination against him based on disability, HWE, and retaliation against him for

his protected activity including his claim that OSB's moving him to the night shift and

Saturdays and Sundays was disability discrimination; and his request for accommodation for

his back injury, which, *inter alia,* limited the amount of weight he could safely lift. Ms. Havens-Dobbs aided and abetted this discriminatory and retaliatory conduct.

125.    Based on the foregoing, OSB and Havens-Dobbs subjected Plaintiff to discrimination and HWE based on OSB's perception that he was disabled with Covid-19 and permanently imminently likely to infect coworkers and students because they were "unvaccinated."

126.    Defendants' conduct was deliberate and willful and intended to harm Plaintiff based on OSB's perception that he was disabled with Covid-19.

127.    These violations were intentional and willful and malicious and warrant imposing liquidated damages.

128.    As the direct and proximate result of Defendants' violations of the PHRA's protection against disability discrimination, HWE, and retaliation, Plaintiff has sustained loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

129.    Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## COUNT VIII

### *GINA –Discrimination, HWE, and Retaliation Based on Genetic Information*

### *Lewis v. OSB*

130.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

131.    GINA prohibits discrimination and HWE based on genetic information. Employers may not discriminate against employees based on genetic information the employer knows about the employees. Nor may employers retaliate against employees who claim discrimination based on genetic information.

132.    OSB is an "employer" under the GINA and falls within jurisdiction of the statute.

133.    The Covid-19 vaccines that OSB moved Plaintiff to the night shift and subjected him to HWE for not taking are based on injecting genetic information into a person and changing or manipulating that person's genetic information.

134.    According to the CDC, "Messenger RNA, or mRNA, is genetic material that tells your body how to make proteins."

135.    According to Genome.gov, "mRNA acts as a cellular messenger. DNA, which is stored in a cell's nucleus, encodes the genetic information for making proteins. mRNA transfers a copy of this genetic information outside of the nucleus, to a cell's cytoplasm, where it is translated into amino acids by ribosomes and then folded into complete proteins."

136.     According to Pfizer, for example, its vaccine contains messenger RNA (mRNA), a kind of genetic material, and a piece of the SARS-CoV-2 virus' genetic material that instructs cells in the body to make the virus' distinctive and noxious "spike" protein and trigger the immune system to learn to react defensively, producing an immune response against the virus.

137.     People who have been injected with a COVID-19 vaccine therefore possess different genetic material or genetic information than those who do not.

138.     OSB discriminated against Plaintiff and subjected him to HWE based on his vaccination status, which violates GINA.

139.     Based on the foregoing, OSB subjected Plaintiff to discrimination and HWE based on genetic information, and retaliation for his claims that he was discriminated against based on genetic information by inter alia moving him to the night shift and Saturdays and Sundays. In addition, OSB's inter alia refusal to let Mr. Lewis return to work, and OSB's subsequent refusal to return Mr. Lewis to the day shift with Saturdays and Sundays off, were further discrimination against him and HWE based on genetic information and retaliation against him for his claim that OSB's moving him to the night shift and Saturdays and Sundays was genetic information discrimination.

140.     These violations were intentional and willful and malicious and warrant imposing punitive damages.

141.     As the direct and proximate result of OSB's violations of GINA's protection against genetic information discrimination, HWE, and retaliation, Plaintiff has suffered loss of

pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

142.    Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of OSB's actions unless and until this Court grants the relief requested herein.

## COUNT IX

### Retaliation for Filing a Claim Under Pennsylvania Workers Compensation Statute

### Lewis v. OSB

143.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

144.    OSB's inter alia refusing to let Mr. Lewis return to work after his physician cleared him to do so, and, after begrudgingly returning him to work, refusing to return him to the day shift with Saturdays and Sundays off, constituted retaliation for Plaintiff Lewis's timely filing a valid workers compensation claim after being injured on the job in late November 2021.

145.    Plaintiff Lewis was entitled to file a workers' compensation claim and did so. He filed the claim within the right time and through the correct method. As described in detail in this Complaint, OSB took adverse job action against Plaintiff Lewis after the claim was filed.

The adverse job action was directly related to and motivated by Plaintiff Lewis' workers' compensation claim.

146.     These violations were intentional and willful and malicious and warrant imposing punitive damages.

147.     As the direct and proximate result of OSB's violations of Pennsylvania law prohibiting retaliation against workers for filing workers compensation claims, Mr. Lewis has suffered loss of pay and related financial harm, emotional and psychological distress, loss of self-esteem, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

148.     Mr. Lewis is now suffering and will continue to suffer irreparable harm and monetary damages as a result of OSB's actions unless and until this Court grants the relief requested herein.

**COUNT X**

*ADEA: HWE, and Retaliation for Filing a Claims Under the ADEA*

*Lewis v. OSB and Havens-Dobbs*

149.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

150.     Plaintiff is over 40 years of age and is protected under the Age Discrimination in Employment Act (ADEA) from discrimination in the workplace and HWE based on his age and from retaliation for engaging in protected activity regarding age discrimination.

151.     OSB is an "employer" under the ADEA and falls within jurisdiction of the statute.

152.     The above-described conduct by OSB was motivated by OSB's animus against Mr. Lewis based on his age and is a continuation of the HWE described in Mr. Lewis's pending federal lawsuit and in his subsequent EEOC/PHRA charge and constitutes retaliation for his claims regarding age discrimination (HWE and retaliation) described in that lawsuit and in his subsequent EEOC/PHRA charge.

153.     These violations were intentional and willful and malicious and warrant imposing liquidated damages.

154.     As the direct and proximate result of Defendant OSB's violations of the ADEA, Plaintiff has sustained severe emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

155.     Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's actions unless and until this Court grants the relief requested herein.

## COUNT XI

*PHRA: HWE, and Retaliation for Filing Age-Discrimination Claims Under the PHRA*

*Lewis v. OSB and Havens-Dobbs*

156.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

157.    Plaintiff is over 40 years of age and is protected under the Pennsylvania Human Rights Act (PHRA) (42 U.S.C. § 2000e- 2 et seq.) from discrimination in the workplace based on his age, HWE, and from retaliation for engaging in protected activity regarding age discrimination.

158.    The above-described conduct by OSB and Ms. Havens-Dobbs was motivated by these Defendants' animus against Mr. Lewis based on his age and is a continuation of the HWE described in Mr. Lewis's pending federal lawsuit and in his subsequent EEOC/PHRA charge and constitutes retaliation for his claims regarding age discrimination (HWE and retaliation) described in that lawsuit and in his subsequent EEOC/PHRA charge. Havens-Dobbs was involved in all the decision making regarding these actions and aided and abetted OSB in this retaliatory conduct.

159.    These violations were intentional and willful and malicious and warrant imposing liquidated damages.

160.    As the direct and proximate result of Defendants' violations of the PHRA, Plaintiff has sustained severe emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

161.    Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's actions unless and until this Court grants the relief requested herein.

## COUNT XII

### *Title VII (sex discrimination): HWE, and Retaliation for Filing a Claims for Sex Discrimination Under Title VII*

### *Lewis v. OSB*

162.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

163.    Plaintiff is protected under Title VII from discrimination in the workplace and HWE based on sex, and from retaliation for engaging in protected activity regarding sex discrimination.

164.    The above-described conduct by OSB was motivated by OSB's animus against Mr. Lewis based on his sex and is a continuation of the HWE described in Mr. Lewis's pending federal lawsuit and in his subsequent EEOC/PHRA charge, and constitutes retaliation for his claims regarding sex discrimination (HWE and retaliation) described in that lawsuit and in his subsequent EEOC/PHRA charge.

165.    Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Title VII.

166.    In discriminating against Officer Lewis by fostering a hostile work environment and retaliating against him because of his protected activity, Defendant OSB violated Title VII.

167.    These violations were intentional and willful and malicious.

168.    These violations warrant imposing punitive damages.

169.    As the direct and proximate result of Defendant OSB's violations of Title VII, Plaintiff Kevin Lewis has sustained severe emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

170.    Plaintiff Kevin Lewis is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant OSB's actions unless and until this Court grants the relief requested herein.

## COUNT XIII

### PHRA: HWE, and Retaliation for Filing Sex-Discrimination Claims Under the PHRA

### Lewis v. OSB and Havens-Dobbs

171.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

172.    Plaintiff is protected under the PHRA from discrimination in the workplace and HWE based on sex, and from retaliation for engaging in protected activity regarding sex discrimination.

173.     The above-described conduct by OSB and Havens-Dobbs was motivated by these Defendants' animus against Mr. Lewis based on his sex and is a continuation of the HWE described in Mr. Lewis's pending federal lawsuit and in his subsequent EEOC/PHRA charge, and constitutes retaliation for his claims regarding sex discrimination (HWE and retaliation) described in that lawsuit and in his subsequent EEOC/PHRA charge.

174.     Based on the foregoing, Defendants have engaged in unlawful employment practices in violation of the PHRA.   Havens-Dobbs aided and abetted this unlawful conduct.

I75.     In discriminating against Officer Lewis by fostering a hostile work environment and retaliating against him because of his protected activity, Defendants violated the PHRA.

176.     These violations were intentional and willful and malicious.

177.     These violations warrant imposing liquidated damages.

178.     As the direct and proximate result of Defendants' violations of the PHRA, Plaintiff has sustained severe emotional and psychological distress, loss of self-esteem, harm to his reputation, and loss of future earning power along with and/or in addition to the damages and losses set forth herein.

179.     Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

**PRAYER FOR RELIEF**

180.    The allegations contained in the preceding paragraphs are hereby realleged and incorporated by reference herein.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants:

a.    Declaring that the acts and practices complained of herein violate Title VII protections against discrimination, HWE, and retaliation for protected activity based on religion;

b.    Declaring that the acts and practices complained of herein violate the PHRA protections against discrimination, HWE, and retaliation for protected activity based on religion;

c.    Declaring that the acts and practices complained of herein violate Title VII protections against discrimination, HWE, and retaliation for protected activity based on race;

d.    Declaring that the acts and practices complained of herein violate the PHRA protections against discrimination, HWE, and retaliation for protected activity based on race;

e.    Declaring that the acts and practices complained of herein violate Section 1981 protections against discrimination, HWE, and retaliation for protected activity based on race;

f.    Declaring that the acts and practices complained of herein violate the ADA protections against discrimination, HWE, and retaliation for protected activity based on disability;

g.      Declaring that the acts and practices complained of herein violate PHRA protections against discrimination, HWE, and retaliation based on disability;

h.      Declaring that the acts and practices complained of herein violate GINA protections against discrimination, HWE, and retaliation for protected activity based on genetic information;

i.      Declaring that the acts and practices complained of herein violate Pennsylvania law prohibiting retaliation for filing a workers compensation claim;

j.      Declaring that the acts and practices complained of herein violate the ADEA protections against retaliation for protected activity based on age;

k.      Declaring that the acts and practices complained of herein violate the PHRA protections against retaliation for protected activity based on age;

l.      Declaring that the acts and practices complained of herein violate Title VII protections against retaliation for protected activity based on sex;

m.      Declaring that the acts and practices complained of herein violate PHRA protections against retaliation for protected activity based on sex;

n.      Declaring that Defendants' violations of Title VII, the PHRA, Section 1981, the ADA, the ADEA, GINA, and Pennsylvania law against retaliation for filing a workers compensation claim were willful and intentional and malicious;

o.      Enjoining and restraining permanently the acts and practices complained of herein;

p.      Awarding compensatory damages to Plaintiff to make Plaintiff whole for all lost earnings capacity that Plaintiff has suffered and will continue to suffer as a result of the discriminatory and retaliatory conduct of OSB complained of herein;

q.      Awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, loss of self-esteem, and all other pain and suffering arising from the discriminatory and retaliatory conduct of OSB complained of herein;

r.      Awarding liquidated damages to Plaintiff;

s.      Awarding punitive damages to Plaintiff;

t.      Awarding Plaintiff the costs of this action together with reasonable attorneys' fees;

u.      Awarding Plaintiff pre- and post-judgment interest;

v.      Awarding Plaintiff such other damages as are appropriate under Title VII, the PHRA, Section 1981, the ADA, ADEA, GINA, and Pennsylvania law prohibiting retaliation for filing a workers compensation claim; and

w.      Granting such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

BRIAN J. FOLEY, ATTORNEY AT LAW

BY: _____

**BRIAN J. FOLEY, ESQUIRE**
Attorney for Plaintiff

Date:  April 29, 2023

# Exhibit A

# Plaintiff's Verification

# VERIFICATION

I certify under penalty of perjury (pursuant to 28 U.S.C. § 1746) that the foregoing statements of fact in

paragraphs 1-180 of the Verified Complaint are true and correct.

Executed on this 29 day of April, 2023.

Kevin Lewis